IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MORTON MILLER, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 14-cv-4245 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| SYLVIA MATHEWS BURWELL, in her official ) | |
| capacity as Secretary of Health and Human ) | |
| Services of the United States, TRUST ) | |
| SOLUTIONS, LLC, WISCONSIN PHYSICIANS ) | |
| SERVICE INSURANCE, CORP., and C2C ) | |
| SOLUTIONS, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, a former physician, brings statutory and constitutional challenges to Medicare's determination that it previously overpaid him and is therefore entitled to recoupment. Plaintiff has initiated but not completed an administrative appeal of Medicare's overpayment determination. The Secretary moves to dismiss [35], arguing that the Court lacks subject matter jurisdiction because Plaintiff has failed to exhaust his administrative remedies. For the reasons stated below, the Court grants the Secretary's motion and denies Plaintiff's motion to strike [41] the declaration attached to the Secretary's motion.

**I.  Background[1]**

This action arises out of Medicare claims that Plaintiff filed while practicing medicine. Medicare is a federally subsidized health insurance program for the aged and disabled. Relevant

---

[1] In considering the Secretary's motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws reasonable inferences in Plaintiff's favor. *Shawnee Trail Conservancy v. U.S. Dep't of Agric.*, 222 F.3d 383, 385 (7th Cir. 2000).

here is Medicare Part B, a "supplementary medical insurance program for the aged and disabled" that compensates physicians for services rendered. 42 U.S.C. § 1395j. The Centers for Medicare & Medicaid Services (CMS) enter into contracts with private entities that perform various Medicare Part B activities. These contractors administer claim payment and overpayment recovery within the following framework.

### A. Claim Payments and Overpayment Recovery

When a Medicare Part B supplier or provider submits a claim for payment, a contractor makes an "initial determination" as to what Medicare will pay the supplier. To ensure accuracy and detect fraud, a contractor may continue to investigate a claim and reopen an initial determination that resulted in overpayment. See 42 C.F.R. § 405.980(a)(1). The Secretary's regulations require reopening to occur on the following timeframe in relevant part:

> (1) Within 1 year from the date of the initial determination or redetermination for any reason.
>
> (2) Within 4 years from the date of the initial determination or redetermination for good cause as defined in § 405.986.
>
> (3) At any time if there exists reliable evidence as defined in § 405.902 that the initial determination was procured by fraud or similar fault as defined in § 405.902.

42 C.F.R. § 405.980(b); see also 42 U.S.C. § 1395ff(b)(1)(G) (authorizing the Secretary to promulgate regulations governing the reopening of an initial determination).

If CMS discovers an overpayment, it may offset or recoup it. See 42 C.F.R. § 405.371(a)(3).[2] Medicare, however, may not offset or recoup overpayments where a supplier or provider is "without fault." 42 U.S.C. § 1395gg(b). Generally, there is a rebuttable

---

[2] An offset is defined as the "recovery by Medicare of a non-Medicare debt by reducing present or future Medicare payments and applying the amount withheld to the indebtedness." 42 C.F.R. § 405.370(a). Recoupment is defined as the "recovery by Medicare of any outstanding Medicare debt by reducing present or future Medicare payments and applying the amount withheld to the indebtedness." *Id.*

presumption that a supplier is "without fault" where an overpayment determination is made "subsequent to the third year following the year in which notice was sent to such individual that such amount had been paid."[3] 42 U.S.C.A. § 1395gg (2003); see *In re Nat'l Podiatric Network First Coast Serv. Options*, 2011 WL 7145430, at *4 (H.H.S. Oct. 26, 2011). For overpayments made three years after the year of payment, "[o]rdinarily, the provider or beneficiary will be considered without fault unless there is evidence to the contrary." Medicare Financial Management Manual (MFMM), ch. 3 at § 80. As the Department of Health and Human Services' Medicare Appeals Council has explained,

> Section 1870(b) does not define the meaning of the term "without fault." However, a provider is without fault if it exercised reasonable care in billing and accepting Medicare payment. MFMM, ch. 3, § 90. A provider has exercised "reasonable care" when it "made full disclosure of all material facts" and "on the basis of the information available to it, including, but not limited to, the Medicare instructions and regulations, it had a reasonable basis for assuming that the payment was correct, or, if it had reason to question the payment; it promptly brought the question to the FI or carrier'' attention." A provider is considered **not** "without fault" if, e.g., it billed, or Medicare paid, for services the provider should have known were not covered. *Id.* at § 90.1.H. The MFMM explains that the provider should have known about a policy or rule if the policy or rule is in the provider manual or in the regulations. *Id.*

*In re Nat'l Podiatric Network*, 2011 WL 7145430, at *4.

### B. Administrative Appeals Process for Claims Denials

Suppliers or providers may appeal initial determinations of overpayment through four levels of administrative review. First, a supplier may request that the contractor conduct an independent "redetermination" of the initial adverse determination. 42 U.S.C. § 1395ff(a)(3); 42 C.F.R. §§ 405.960-978. If the redetermination is unfavorable, the supplier may request "reconsideration" by a Qualified Independent Contractor (QIC). 42 U.S.C. § 1395ff(b)(1)(A) & (c); 42 C.F.R. §§ 405.960-978. If the QIC's reconsideration is unfavorable (or untimely) and

---

[3] In 2013, Congress extended the applicable period to five years. See 42 U.S.C.A. § 1395gg (2013).

the amount in controversy requirement is satisfied, the supplier may request a hearing before an administrative law judge (ALJ). 42 U.S.C. § 1395ff(d); 42 C.F.R. §§ 405.1000-54. If the ALJ's decision is unfavorable (or untimely) and the amount in controversy requirement is satisfied, a supplier may seek review with the Medicare Appeals Council (MAC). 42 U.S.C. § 1395ff(d)(2) & (d)(3)(A); 42 C.F.R. §§ 405.1100-30. The MAC decision is the final decision of the Secretary. 42 C.F.R. § 405.1130. Once the MAC has issued a final decision (or failed to issue a timely decision), the supplier may appeal to a district court. 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1395ff(b)(1)(A)); 42 U.S.C. § 1395ff(d)(3)(B); 42 C.F.R. §§ 405.1130, 405.1132(a).

### C. Medicare's Recoupment Action

In late 2006, TrustSolutions—a Medicare contractor hired to identify fraud and abuse—detected a pattern of what it believed to be suspicious billing from Plaintiff. As a part of its audit, it requested a sample of various records from Plaintiff and found his responsive documentation to be haphazard and incomplete. See [36] at 7, [36-1] at 2-3. A criminal investigation and prosecution began, at which point TrustSolutions suspended its administrative action. After the criminal matter was completed in 2012, TrustSolutions resumed the action. In April 2012, it notified Plaintiff that it had identified an overpayment of approximately $1 million. A month later, Wisconsin Physicians Service Insurance Corporation (WPS)—the contractor that administers physician reimbursement in Illinois—issued an overpayment demand for that same value and initiated recoupment. WPS stated that Medicare paid Plaintiff for services that he should have known he was not entitled to and that he therefore was not "without fault." See 42 U.S.C. § 1395gg(b) & (c).

Plaintiff then initiated an administrative appeal. WPS issued an unfavorable redetermination based on two findings: that Plaintiff's documentation was non-existent with

respect to some claims for payment and inadequate with respect to others. The QIC's decision on reconsideration was unfavorable for the same reasons. Plaintiff then requested a hearing before an ALJ. At the hearing, he appears to have argued that the recoupment action was unlawful insofar as it turned on non-existent documentation.[4] More specifically, Plaintiff contended (and continues to contend) that Medicare had not requested the relevant records until it reopened his claims; he further alleges that by the time it reopened his claims, his duty to maintain these records had expired under Illinois law, and, accordingly, he had discarded them. In other words, Plaintiff appears to have argued that a recoupment action based on lack of documentation is unlawful after the duty to maintain records has expired.[5] Plaintiff further alleges the following:

> 38. After hearing these arguments, Judge Bergen stated that he would not and could not decide these questions since he lacked jurisdiction to do so, his role being limited to whether Dr. Miller could establish that he had provided the care on specific dates of service for the listed beneficiaries and adequately documented the services billed. He specifically found that he was unable to look at the propriety of the Recoupment Action, reopening the claims to seek reimbursement.
>
> 39. Judge Bergen's action, on information and belief, was based upon the position of the HHS Secretary that actions reopening a claim under 42 C.F.R. §980.370 are final when made by the Secretary's agents and may not be reconsidered during the claim review process as described above.

*Id.* at ¶¶ 38-39. Plaintiff does not allege that the ALJ issued a final decision, nor does he allege that he has completed the final step in the administrative appeals process: an appeal to the MAC. In the meantime, the United States Treasury allegedly has begun to withhold amounts from Plaintiff's Social Security payments to recoup the alleged overpayments.

---

[4] Plaintiff does not attach a transcript of the hearing, nor does he allege that the ALJ has issued a final decision. Accordingly, the Court's understanding of the arguments that Plaintiff presented before the ALJ are based on his allegations, see [31] at ¶ 37, which the Secretary does not contest.

[5] Plaintiff does not state the exact grounds of unlawfulness that he argued before the ALJ. See [31] at ¶ 37.

5

### D. This Action

Plaintiff subsequently brought this action, contending that the decision to reopen his claims was untimely because it followed the expiration of his duty to maintain the requested records. He also challenges the constitutionality of 42 C.F.R. § 405.980 (the "Reopening Regulation"), a review-insulating regulation under which a reopening decision "is binding and not subject to appeal." 42 C.F.R. § 405.980(a)(5). Specifically, Plaintiff argues that:

(1) the Reopening Regulation violates his procedural and substantive due process rights especially as applied to him, because the Secretary's contractor has waited so long to effectuate the reopening that Dr. Miller has been deprived of the means to defend himself against recoupment,

(2) the Reopening Regulation is unconstitutional since it allows the Secretary's contractor to expose providers like Dr. Miller to great expense and uncertainty without a hearing and without any meaningful requirement to establish cause for the reopening,

[46] at 5. Plaintiff also alleges that:

(3) the actions of the Secretary violate the APA's prohibition against arbitrary and egregious conduct, and

(4) the Secretary's action in taking Dr. Miller's social security payments violates the Federal Debt Collection Improvement Act.

*Id.* Plaintiff asks the Court to find the recoupment action unconstitutional, to enjoin it, and to prohibit further collection efforts or recoupment from Plaintiff's Social Security payments. The Secretary now moves to dismiss for failure to exhaust his administrative remedies.

### II. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of claims over which the federal courts lack subject matter jurisdiction. There are two types of rule 12(b)(1) challenges—factual and facial—and they have a "critical difference." *Apex Digital Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). When a defendant argues that "the plaintiffs' complaints, even if true, were purportedly insufficient to establish injury-in-fact," the challenge

6

is a facial one. *Id.* at 443-44. "Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction." *Id.* at 443. Factual challenges, however, lie "where 'the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction.'" *Id.* (quoting *United Phosphorus, Ltd. v. Angus Chem. Co.*, 332 F.3d 942, 946 (7th Cir. 2003)). Courts may look beyond the complaint only when a defendant brings a factual attack against jurisdiction. *Id.* at 443.

## III. Analysis

The Secretary argues that the Court facially lacks subject matter jurisdiction because Plaintiff has failed to exhaust his administrative remedies. Plaintiff acknowledges that he has not completed the four-step administrative review process, arguing that the Court nevertheless has jurisdiction under the Medicare Act, 28 U.S.C. § 1331, and the Administrative Procedure Act. For the reasons stated below, the Court concludes that it lacks jurisdiction under each statute.

### A. The Medicare Act and Federal Question Jurisdiction

The Seventh Circuit has explained the relationship between jurisdiction under the Medicare Act, 42 U.S.C. § 405(h), and federal question jurisdiction, 28 U.S.C. § 1331 as follows:

> [g]eneral federal question jurisdiction is set forth in 28 U.S.C. § 1331, which states that "district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States," but claims under the Medicare Act must take a different route. The Social Security Act at 42 U.S.C. § 405(h) provides that "no action against the United States, the Commissioner of Social Security, or any officer or employee thereof, shall be brought under § 1331 . . . to recover on any claim arising under" the Social Security Act. That provision was incorporated into the Medicare Act through 42 U.S.C. § 1395ii, and has been held to preclude federal question jurisdiction unless the Medicare program's administrative review process has been exhausted. In *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 5 (2000), the Supreme Court held that § 405(h), as incorporated by § 1395ii, bars federal question jurisdiction under 28 U.S.C. § 1331, and requires parties to proceed instead through the special review channel that the Medicare statutes create. Thus,

> a provider must channel virtually all legal attacks through the Medicare program's administrative review process before it may seek judicial review.

*Michael Reese Hosp. & Med. Ctr. v. Thompson*, 427 F.3d 436, 440-41 (7th Cir. 2005). Under *Bowen v. Michigan Academy*, 476 U.S. 667 (1986), an exception exists where application of § 405(h) "would not simply channel review through the agency, but would mean no review at all," *id.* at 441 (citing *Illinois Council*, 529 U.S. at 19); this exception avoids the "serious constitutional question" that would arise otherwise. *Michigan Academy*, 476 U.S. at 681 n.12 (citations and internal quotation marks omitted).

Assuming that § 405(h)'s exhaustion requirement does apply, it may be waived or excused in certain circumstances. The Secretary may waive the exhaustion requirement if she finds further review unwarranted because the internal needs of the agency are fulfilled or the relief sought is beyond her power to confer. *Mathews v. Eldridge*, 424 U.S. 319, 330 (1976). Where the Secretary declines to waive exhaustion, a court may override her decision and waive the requirement itself if "a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Id.* Three factors from *Eldridge* influence a court's decision to find waiver: (1) whether the claim is collateral to a demand for benefits; (2) whether exhaustion would be futile; and (3) whether a plaintiff would suffer irreparable harm if required to move through the administrative procedure before obtaining relief. *Martin v. Shalala*, 63 F.3d 497, 504 (7th Cir. 1995). At issue here is whether the *Michigan Academy* exception applies and, if not, whether Plaintiff's failure to exhaust is waived based on application of the *Eldridge* factors.[6]

---

[6] Plaintiff briefly argues that these issues only apply to his claims "arising under" the Medicare Act, see § 405(h) and that his DCIA claim does not arise under Act because it "does not have its standing and substantive basis in the Medicare Act." [46] at 17. "A claim 'arises under' the Medicare Act when both the standing and the substantive basis for the presentation of the claims stem from the Medicare Act." *Ancillary Affiliated Health Servs., Inc. v. Shalala*, 165 F.3d 1069, 1070 (7th Cir. 1998) (citations and

### 1. *Michigan Academy* Exception

Plaintiff argues that the *Michigan Academy* exception applies because application of § 405(h) here would mean "no review at all." *Michael Reese Hosp.*, 427 F.3d at 441. But clearly some of Plaintiff's challenges are subject to administrative review. Plaintiff already has challenged (and presumably continues to challenge) a finding of overpayment on the merits, providing documentation of at least some claims. On redetermination and reconsideration, the contractor and the QIC have evaluated the merits of the overpayment determination in light of this documentation, and the ALJ and MAC may consider these same issues on appeal. The ALJ and MAC may also consider whether recoupment is barred even if Medicare did overpay because Plaintiff is "without fault" within the meaning of 42 U.S.C. § 1395gg(b). See *In re Nat'l Podiatric Network*, 2011 WL 7145430, at *4-*6; *In the Case of Comprehensive Decubitus Therapy, Inc.*, 2013 WL 8913132, at *4 (H.H.S. Sept. 6, 2013). Accordingly, application of the exhaustion requirement does not preclude review of all of Plaintiff's challenges to the overpayment demand.

That said, Plaintiff is likely correct that some of his challenges cannot be reviewed in the administrative context. For example, the agency is unlikely to address his claim that the reopening decision was untimely, as the Reopening Regulation provides that a contractor's decision to reopen a claim "is binding and not subject to appeal." 42 C.F.R. § 405.980(a)(5). The agency is also unlikely to address his constitutional challenge to the Reopening Regulation, as it is well established that "[c]onstitutional questions obviously are unsuited to resolution in

---

internal quotation marks omitted). In other words, a claim "arises under" the Medicare Act where it is "inextricably intertwined" with a claim for Medicare benefits. *Heckler v. Ringer*, 466 U.S. 602, 624 (1984). The DCIA claim is "inextricably intertwined" with the underlying claim for benefits (meaning defense against recoupment). The debt would not exist but for the overpayment determination.

administrative hearing procedures." *Califano v. Sanders*, 430 U.S. 99, 109 (1977); accord *Illinois Council*, 529 U.S. at 24.

Accordingly, the question is whether the channeling requirement applies when administrative review only can address some but not all of Plaintiff's grounds for appeal. *Illinois Council* explains that the exhaustion requirement applies even in these circumstances. There, a group of nursing homes brought statutory and constitutional challenges to the validity of Medicare regulations imposing sanctions or remedies on homes that violated certain substantive standards. *Id.* at 2. Rather than channeling these claims through the administrative review process, Illinois Council brought these claims directly in federal court. On appeal, the question was whether exhaustion was required and whether the federal court therefore lacked subject matter jurisdiction. Like Plaintiff here, Illinois Council argued that the exhaustion requirement should not apply because "a host of procedural regulations unlawfully limit the extent to which the agency itself [would] provide the administrative review channel leading to judicial review." *Id.* at 23. More specifically, it contended that regulations similar to the Reopening Regulation insulated from review agency determinations regarding non-compliance with substantive standards or which of the resulting penalties to impose. The Court found that the exhaustion requirement nevertheless applied based on the following reasoning.

> The Council's members remain free . . . after following the special review route that the statutes prescribe, to contest in court the lawfulness of any regulation or statute upon which an agency determination depends. The fact that the agency might not provide a hearing for that *particular contention*, or may lack the power to provide one, see *Sanders*, 430 U.S., at 109 ("Constitutional questions obviously are unsuited to resolution in administrative hearing procedures ..."); *Salfi*, 422 U.S., at 764 . . . is beside the point because it is the "action" arising under the Medicare Act that must be channeled through the agency. See *Salfi, supra*, at 762. After the action has been so channeled, the court will consider the contention when it later reviews the action. And a court reviewing an agency determination under § 405(g) has adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot, decide, see *Thunder Basin Coal*,

10

510 U.S., at 215, and n. 20; *Haitian Refugee Center*, *supra*, at 494; *Ringer*, 466 U.S., at 617; *Salfi*, *supra*, at 762, including, where necessary, the authority to develop an evidentiary record.

*Illinois Council*, 529 U.S. at 23-24. In finding that the exhaustion requirement applied, the Supreme Court further reasoned that exhaustion would give the agency "the opportunity to reconsider its policies, interpretations, and regulations in light of those challenges." *Id.* It also would allow an agency to resolve claims on non-constitutional grounds—reasoning that flows from principles of constitutional avoidance. See *Abbey v. Sullivan*, 978 F.2d 37, 45 (2d Cir. 1992). The Supreme Court also emphasized that application of the exhaustion requirement was constitutional because it would postpone rather than preclude review of certain contentions. See *Illinois Council*, 529 U.S. at 19 (explaining that a strong presumption against preclusion of review is not implicated by a provision postponing review). The same is true here. Based *Illinois Council*, the Court finds that Plaintiff must administratively exhaust his claims before coming to federal court.[7]

### 2. Waiver of Administrative Exhaustion

Next, the Court considers whether to waive the exhaustion requirement based on the *Eldridge* factors—that is, (1) whether the claim is collateral to a demand for benefits; (2) whether exhaustion would be futile; and (3) whether a plaintiff would suffer irreparable harm if required to move through the administrative procedure before obtaining relief. See *Martin*, 63 F.3d at 504 (citing *Abbey v. Sullivan*, 978 F.2d 37, 44 (2d Cir. 1992); *Day v. Shalala*, 23 F.3d 1052, 1059 (6th Cir. 1994). Application of these factors is "intensely practical," and the decision whether to

---

[7] Plaintiff urges the Court to conclude otherwise based on *St. Francis Hosp. v. Sebelius*, 874 F. Supp. 2d 127 (E.D.N.Y. 2012), and *St. Francis Hosp. v. Sebelius*, 2014 WL 3715117 (E.D.N.Y. July 23, 2014). Although both opinions addressed constitutional challenges to the Reopening Regulation, neither addresses the applicability of *Michigan Academy* exception. The first decision found that exhaustion was required but then waived it based on application of the three *Eldridge* factors. By the time the court decided the second opinion, the plaintiff had completed the administrative review process; the question therefore was not whether an exception to the exhaustion requirement applied.

waive is "not be made solely by mechanical application of the *Eldridge* factors but should also be guided by the policies underlying the exhaustion requirement." *Bowen v. City of New York*, 476 U.S. 467, 484 (1986) (citation and internal quotation marks omitted). The policy considerations of exhaustion are to "prevent[] premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Salfi*, 422 U.S. at 765; accord *Michael Reese Hosp.*, 427 F.3d at 441.

### a. Collateral Claim

A claim may be collateral to a plaintiff's demand for benefits (or in this case, Plaintiff's attack against recoupment) where (1) it facially challenges an agency policy and (2) the court's "holding regarding the validity of that policy stands independent of the ultimate merits of [a] plaintiff's claim for benefits." *Marcus v. Sullivan*, 926 F.2d 604, 614 (7th Cir. 1991). In other words, a claim is collateral where it doesn't automatically increase benefits if successful. In *Marcus*, for example, the Seventh Circuit addressed a claim that the Secretary violated the Social Security Act by denying disability benefits without first assessing each claimant's functional capacities. The Seventh Circuit found that this claim was collateral because "[e]ven after the new standard of eligibility is applied, some claimants will fail to qualify for disability benefits." *Marcus v. Sullivan*, 926 F.2d 604, 614 (7th Cir. 1991). In *Day v. Shalala*, 23 F.3d 1052 (6th Cir. 1994), the Sixth Circuit addressed a claim that the Ohio Bureau of Disability Determination failed to comply with the Social Security Act and accompanying regulations by failing to obtain proper medical assessments and consultative examinations from treating physicians, using unpublished guidelines in the determination of claimants' residual functional capacities, and

issuing inadequate notices of denial of benefits. The Sixth Circuit found the claim collateral because "Plaintiffs do not seek to be found eligible for benefits in this action, but rather challenge the procedure by which eligibility determinations were made by the BDD. . . [they] would not automatically be entitled to receive benefits if they prevail, but only to receive 'the procedure they should have been accorded in the first place.'" *Id.* at 1059 (quoting *City of New York*, 476 U.S. at 484 (1986)). In contrast, where a plaintiff asks for relief that would automatically increase benefits, the Seventh Circuit has found that challenge "part and parcel of [a] claim for benefits." *Martin v. Shalala*, 63 F.3d 497, 504 (7th Cir. 1995).

Here, the bulk of Plaintiff's claims are non-collateral. A favorable finding on his challenges to the validity of the reopening decision and the overpayment determination, for example, would only increase his benefits. The requested relief—to enjoin the recoupment action and to direct the Secretary to cease collection and recoupment efforts—also would increase his benefits. It is true that his constitutional challenge to the Reopening Regulation may be collateral; if successful, it would grant him an opportunity to challenge the reopening decision without guaranteeing any outcome on the merits. But taking an "intensely practical approach" that emphasizes the "policies underlying the exhaustion requirement," *City of New York*, 476 U.S. at 484, the Court finds this claim insufficient to justify waiver. As explained above, requiring exhaustion as to the non-collateral claims before hearing his collateral claim will prevent premature interference with agency processes and give Medicare a full opportunity to review its own regulations, correct any of its own errors, and apply its expertise in compiling a record adequate for judicial review. *Salfi*, 422 U.S. at 765; accord *Michael Reese Hosp.*, 427 F.3d at 441. It may also create an opportunity to resolve certain issues on non-constitutional

grounds. See *Abbey*, 978 F.2d at 45. Accordingly, this factor weighs against waiving the exhaustion requirement.

### b. Futility

The Court now turns to whether further administrative review of Plaintiff's claims would be futile. Plaintiff argues that exhaustion is futile because he cannot challenge the reopening decision or the Reopening Regulation administratively; he can only challenge the merits of the overpayment demand. More specifically, he contends that "[s]ince he does not have the records, this is a burden he could never hope to carry," arguing that the results of an administrative merits determination is therefore an "inevitable[] decision against Dr. Miller." *Id.* at 8, 9. Plaintiff also argues that, based on MAC precedent, the MAC will inevitably find him ineligible for a "without fault" finding under § 1395gg because he has no documentation substantiating the services performed.

The Court is unpersuaded. In his amended complaint and response motion, Plaintiff acknowledges that he does not lack documentation as to *all* of the underlying claims; he only lacks documentation as to some of them. The redetermination and reconsideration decisions also indicate that Plaintiff has presented some documentation to the agency; it found overpayment based on nonexistent documentation of some claims for payment and *inadequate* documentation in the case of other claims. The ALJ and MAC have yet to review this second finding of inadequate documentation. Based on the limited facts before the Court, it appears conceivable that they could reverse this finding as to some of the claims, potentially reducing the value of overpayment. It is also conceivable that they could make a "no fault" determination as to some of the overpayments. For these reasons, it would be premature to conclude that Plaintiff's case before the agency is factually hopeless.

14

Moreover, even if the Court did find that Plaintiff's facts made his defense against overpayment weak on the merits, the Court still would not find futility. Futility exists "if there is no reasonable prospect that the applicant could obtain any relief by pursuing them" because, for example, an agency is jurisdictionally incompetent to address any of a plaintiff's claims. *Martin*, 63 F.3d at 504. In other words, there is no reasonable prospect of relief where "the Secretary has determined that the only issue to be resolved is a matter of constitutional law concededly beyond his competence to decide." *Salfi*, 422 U.S. at 767; accord *Eldridge*, 424 U.S. at 330. Plaintiff's argument for futility is distinguishable; it asserts that futility exists where a plaintiff is unlikely to succeed on the merits because his *facts* are weak. But futility in the context of waiver doctrine does not turn on the factual weakness of an individual claim. It turns on whether exhaustion "would still serve the purposes of exhaustion and not be futile *in the context of the system.*" *Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1115 (9th Cir. 2003) (emphasis added). Exhaustion here would not be futile within the context of the system. On the contrary, waiving exhaustion for arguably factually weak claims like Plaintiff's would contradict the policy rationale of exhaustion. It would cause courts to preemptively evaluate the merits of every case pre-exhaustion—and based on an undeveloped factual record. Waiver doctrine does not permit such a judicial guessing game as to likelihood of success on the merits. Moreover, courts would lose the benefit of the agencies' expertise and deprive them of the opportunity to correct their own errors. They would also create a two-track review process that channels strong claims through the agency and weak cases through the courts—an outcome that has no support in the Medicare Act. Administrative review of Plaintiff's claim may be futile in some sense, but it is not futile in the sense of the exhaustion doctrine. On the contrary, a more developed record would serve the purposes of exhaustion by developing the factual record necessary to review the

agency's findings as to overpayment and fault within the meaning of § 1395gg(b). Accordingly, the Court does not find futility.

### c. Irreparable Harm

Irreparable harm exists where "deferment of judicial review until exhaustion of administrative remedies would cause them injury that cannot be remedied by later payment of the benefits requested." *Martin*, 63 F.3d at 505. Courts find irreparable harm, for example, where "because of [a plaintiff's] physical condition and dependency upon the disability benefits, an erroneous termination would damage him in a way not recompensable through retroactive payments." *Eldridge*, 424 U.S. at 331. Plaintiff does not indicate that he is physically dependent on Social Security payments. Rather, he complains of the uncertainty and stress associated with further delay. But such harm is not irreparable. As *Illinois Council* explained, the Medicare Act prioritizes the benefits of exhaustion over "occasional individual, delay-related hardship. In the context of a massive, complex health and safety program such as Medicare, embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations, any of which may become the subject of a legal challenge in any of several different courts, paying this price may seem justified." *Illinois Council*, 529 U.S. at 13. Plaintiff does not indicate that his harm cannot be remedied monetarily. Accordingly, there is no basis to find irreparable harm.

Because the bulk of Plaintiff's claims are non-collateral, because they are not futile, and because Plaintiff will not suffer irreparable harm, the Court declines to waive the exhaustion requirement.

### B. The APA

The amended complaint also alleges jurisdiction under the Administrative Procedure Act. First, it alleges jurisdiction under 5 U.S.C. § 706(2)(A), which permits a court to "set aside

agency action findings, and conclusions found to be * * * arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." But it has been "long held that this provision is not an independent grant of subject-matter jurisdiction." *Your Home Visiting Nurse Servs., Inc.*, 525 U.S. 449, 457-58 (1999). Second, it alleges jurisdiction under § 704, which provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." This provision does not apply because there is no "final agency action." For the purposes of § 704, "any definitive agency decision is considered 'final,' and therefore reviewable, unless the agency's regulations require exhaustion as a prerequisite to judicial review." *Shawnee Trail Conservancy v. U.S. Dep't of Agric.*, 222 F.3d 383, 388-89 (7th Cir. 2000). As explained above, the agency's regulations expressly require exhaustion, which is only complete upon the MAC's review of the ALJ's decision. Accordingly, there is no jurisdiction under the APA.

### C.     Dismissal as to All Defendants

Lastly, the Secretary argues that it is the sole proper defendant and that its arguments apply to all defendants. See 42 U.S.C. § 1395kk-1(d)(4)(A) & 42 C.F.R. § 421.5(b) (stating that the Secretary is the real party in interest for claims relating to claims processing by Medicare Administrative Contractors); 42 U.S.C. §§ 1320c-6(b), 1395ddd(e) & 42 C.F.R. § 421.316(a) (limiting liability for Medicare Integrity Program contractors); 42 U.S.C. § 1395ff(c)(5) (limiting liability for Qualified Independent Contractors). Based on this uncontested argument, the Court dismisses with respect to all Defendants.

### D. Plaintiff's Motion to Strike

Plaintiff moves to strike the declaration of Karen Hurley attached to the Secretary's motion to dismiss. Because the declaration has been unnecessary to the Court's assessment of the jurisdictional issues addressed above, the Court denies Plaintiff's motion [41] as moot.

### IV. Conclusion

For the foregoing reasons, the Court grants the Secretary's motion to dismiss [35] and denies Plaintiff's motion to strike the declaration of Karen Hurley [41].

Dated: May 11, 2015

Robert M. Dow, Jr.
United States District Judge